2006-NMCA-027

131 P.3d 675

**MAGNOLIA MOUNTAIN LIMITED PARTNERSHIP, a Texas limited partnership, Plaintiff–Appellee,**

v.

**SKI RIO PARTNERS, LTD., a Texas limited partnership, Defendant–Appellant.**

No. 24,740.

Court of Appeals of New Mexico.

Dec. 12, 2005.

Scheuer, Yost & Patterson, Donald A. Walcott, Charles V. Henry, IV, Santa Fe, NM, for Appellee.

Holland & Hart, L.L.P., Bradford C. Berge, Robert J. Sutphin, Jr., Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} In this case, we decide whether the trial court abused its discretion in refusing to set aside a default judgment of foreclosure on a finding that the defendant had not presented a meritorious defense. Holding that

the trial court acted within its discretion, we affirm.

## BACKGROUND

{2} This case arises out of a default judgment of foreclosure entered in favor of Plaintiff–Appellee, Magnolia Mountain Limited Partnership. Defendant–Appellant, Ski Rio Partners, does not dispute that the note was in default, but many of the other pertinent facts are disputed. Defendant's basic argument is that although it was properly served with a complaint for foreclosure, it did not answer the complaint because it relied to its detriment on Plaintiff's assertion that if Defendant cooperated, Plaintiff would not actually pursue foreclosure. Under established New Mexico law, a defendant seeking to set aside a default judgment must show grounds for relief under Rule 1–060(B) NMRA, which the foregoing facts tend to establish, and one or more meritorious defenses. *Sunwest Bank v. Roderiguez*, 108 N.M. 211, 213, 770 P.2d 533, 535 (1989). As discussed fully below, New Mexico case law generally requires us to accept all facts pleaded by the defendant in a motion to set aside a default judgment as true. *See id.* at 214–15, 770 P.2d at 536–37. Over the course of this litigation, however, Defendant has put forth at least four different versions of the disputed facts. Thus, we begin by setting forth the procedural history of the case and briefly explaining Defendant's factual allegations at each stage of the proceedings below.

## FACTS AND PROCEDURAL HISTORY

{3} In 1998, Plaintiff sold Defendant some property in Northern New Mexico known as the Ski Rio Resort. The property was the subject of a mortgage and promissory note for $400,000 executed by Plaintiff and Defendant. Defendant asserts that it was "arguably in default" and admits that "it had not made all payments timely." After sending several demand letters threatening immediate foreclosure, Plaintiff filed its foreclosure complaint on February 28, 2003. Defendant was properly served with the complaint on March 10, 2003. Defendant did not answer the complaint. Plaintiff moved for an entry of default judgment on April 24, 2003, and on May 6, 2003, Judge Sam Sanchez entered the default judgment. A sale was conducted by a special master on June 4, 2003, at which Plaintiff bought the property.

{4} On August 8, 2003, Defendant moved to set aside the default judgment. In its motion, Defendant argued that Plaintiff's actions constituted fraud, misrepresentation, and misconduct, and that such a showing was all that was required to set aside the judgment under Rule 1–060(B)(3). Defendant argued that it was not required to show "that there would have been a different result had the fraud not occurred."

{5} In support of its arguments, Defendant attached an affidavit from its Project Manager, George Wollmann, which alleged the following facts. Upon receiving the foreclosure complaint, Defendant immediately contacted David Hendricks, the owner of the Plaintiff partnership. Mr. Hendricks stated that "if [Defendant] did not disagree with the dollar amount sought in the summons that [it] did not need to file an answer." Mr. Wollmann had suggested getting a New Mexico attorney, but one of Defendant's partners "did not want to waste the money if it was not necessary." Mr. Wollmann voiced this concern to Mr. Hendricks, who responded that "if [Defendant] did not disagree with the amount there was no reason to get an attorney to file an answer." Mr. Hendricks also said that there would be "plenty of opportunities to cure the defaults and that a lot of things had to happen and that the foreclosure process was very slow in New Mexico." Finally, there was a possibility that Defendant would sell the resort, and Mr. Hendricks told Defendant that if the planned sale went through, the sale would "occur before foreclosure and eliminate the controversy." In its motion, Defendant alleged that, because it trusted Mr. Hendricks, it chose not to answer the complaint.

{6} Defendant's motion also asserted that before and after the complaint was filed, it was trying to sell the resort and had found a potential buyer who was in the process of obtaining financing. Mr. Hendricks had "suggested" that Defendant "could sell the Resort before Mr. Hendricks took further action." Mr. Hendricks was an active participant in the negotiations with the potential buyer, cooperating in ironing out the details

relating to water rights. Even after he had "secretly" obtained the default judgment and had bought the property at the foreclosure sale, Mr. Hendricks continued to pretend to cooperate with Defendant in its efforts to sell the resort. Because Mr. Hendricks had "led [Defendant] to believe that . . . he was content waiting for the sale . . . or making other arrangements," Defendant took no actions regarding the foreclosure complaint.

{7} After argument, Judge Sanchez granted Defendant's motion and set aside the judgment, allowing Defendant to answer the complaint. Defendant answered the complaint and also for the first time deposited $528,854.05, which it characterized as the sum demanded by Plaintiff plus interest, into the court registry. Defendant included in its answer a third-party complaint against Mountain Highlands L.L.C., the current owner of the property, which was later dismissed from the case. Then, Plaintiff filed a motion asking Judge Sanchez to reconsider his decision setting aside the judgment. Before Judge Sanchez ruled on the motion to reconsider, Mountain Highlands removed him from the case by exercising a peremptory excusal. The case was reassigned to Judge Peggy Nelson.

{8} In both the response to Defendant's initial motion to set aside and the motion for reconsideration, Plaintiff argued that allegations of fraud were not alone sufficient to set aside a default judgment. Instead, Plaintiff asserted that a default judgment should be set aside only if a defendant can also show one or more meritorious defenses to the underlying action. Thus, Defendant filed an answer to the original foreclosure complaint alleging five defenses on the merits: unclean hands, waiver, laches, estoppel, and a separately numbered defense that "Plaintiff's claims are barred in whole or part by Plaintiff's own fraudulent conduct." Defendant also included a counterclaim, which sought damages and other relief.

{9} In support of its claims, Defendant modified its factual allegations as follows, but no new affidavits were ever filed. Defendant now claimed that it had been "negotiating" with Mr. Hendricks since December 2002, and that throughout the negotiations, Mr. Hendricks was "well aware of [Defendant's] intentions to either pay the amount owing . . . or sell the property to a third party." Mr. Hendricks "knew or should have known that Ski Rio had the ability to pay the amount owing . . . on short notice." Further, Mr. Hendricks "assured" Defendant that there was no reason to get an attorney or file a response to the foreclosure complaint. Mr. Hendricks made these "assurances" knowing they were false and with the intent to deceive Defendant so that it would not respond to the complaint.

{10} After hearing argument, Judge Nelson found that Defendant's response to the complaint did not assert any meritorious defenses. She then reinstated the default judgment. Judge Nelson allowed Defendant to file supplemental briefing on the issue of meritorious defenses. In the supplemental briefing, Defendant asserted several new defenses and made the following modifications to its factual allegations. Plaintiff, through Mr. Hendricks, "introduced" Defendant to the potential buyer of the property. Plaintiff told Defendant that "Plaintiff understood that it would get paid from the proceeds of the sale prior to any foreclosure taking place." As a result, Plaintiff indicated that the foreclosure was "no longer an issue." Finally, Mr. Hendricks "promised that he would not have to foreclose the property" so long as Defendant sold it to a particular buyer.

{11} After supplemental briefing and another hearing, Judge Nelson again denied the motion to set aside the default judgment. This appeal followed. In its appellate briefs, Defendant has yet again revised its facts. Now it alleges as follows. Defendant had told Plaintiff that it "stood ready and able to pay the mortgage, should [Plaintiff] deem payment necessary. Instead of paying the amount alleged to be owing, as [it] would have done," Defendant "accepted [Plaintiff's] promise that [Plaintiff] would not foreclose." The result was that Plaintiff "secretly foreclosed on the mortgage and promissory note, robbed [Defendant] of its redemption rights, purchased the property for itself, and thereafter sold it for a handsome profit."

## STANDARD OF REVIEW

{12} We generally review a trial court's denial of a motion to set aside a default judgment for abuse of discretion. *Sunwest Bank,* 108 N.M. at 213, 770 P.2d at 535. Our Supreme Court has specifically held that the meritorious defense component of the analysis is also reviewed for abuse of discretion. *Id.* at 214, 770 P.2d at 536 ("The finding of a meritorious defense is addressed to the sound discretion of the trial court[.]").

## DISCUSSION

### Changing Factual Bases

{13} We first address the standard for conducting the meritorious defense analysis, as set forth in *Sunwest Bank,* 108 N.M. 211, 770 P.2d 533. In *Sunwest Bank,* our Supreme Court began by explaining that the reason for requiring a showing of a meritorious defense is "to ascertain whether there is some possibility that the outcome of the suit after trial will be different from the result achieved by the default." *Id.* at 214, 770 P.2d at 536. In order to allow for this determination, the Court held that the defendants must do more than assert "bare legal conclusions that lack factual support." *Id.* Rather, they must " 'set[ ] forth relevant legal grounds substantiated by a credible factual basis.' " *Id.* (quoting *Kirtland v. Fort Morgan Auth. Sewer Serv., Inc.,* 524 So.2d 600, 606 (Ala.1988)). Although this showing requires more than "the mere notice requirements that would suffice if plead[ed] before default," *Sunwest Bank,* 108 N.M. at 214, 770 P.2d at 536, "facts stated in the ... motion should be accepted as true." *Id.* at 215, 770 P.2d at 537.

{14} The standard set forth in *Sunwest Bank* is not completely clear. Specifically, it is unclear how the trial court is to determine whether the claims are supported by a "credible" factual basis when there has been no evidentiary hearing. *Id.* at 214, 770 P.2d at 536. "Credibility" is defined as "[t]he quality that makes something ... worthy of belief." *Black's Law Dictionary* 396 (8th ed.2004). Thus, because *Sunwest Bank* also says that factual allegations should be "accepted as true" (i.e., believed), we do not think that the Court intended the word "credible" to be

given its ordinary meaning. 108 N.M. at 215, 770 P.2d at 537.

{15} We take guidance in resolving this difficulty from *Kirtland,* 524 So.2d 600, which is the case our Court quoted for the proposition that a "credible factual basis" is required for a showing of a meritorious defense. *Sunwest Bank,* 108 N.M. at 214, 770 P.2d at 536. *Kirtland* also states that the movant must set forth "a clear and specific statement showing, not by conclusion, but by definite recitation of facts, that an injustice has been probably done by the judgment," 524 So.2d at 606 (internal quotation marks and citations omitted), and that the movant must "counter the cause of action averred in the complaint with specificity." *Id.* There is nothing in any of these statements, or in *Sunwest Bank,* indicating that a court conducting a meritorious defense analysis should weigh evidence to determine "credibility" in the normal sense of the word. Thus, the most logical reading of *Sunwest Bank* is that a litigant attempting to show a meritorious defense is subject to ⹁a heightened pleading requirement, similar to the pleading requirement under Rule 1–009 NMRA. *See, e.g.,* Rule 1–009(B) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

{16} We also note that *Kirtland,* 524 So.2d at 606, relied on the Restatement (Second) of Judgments § 67 (1982), which states that the test employed in assessing whether a meritorious defense has been asserted is "essentially the same as used in considering summary judgment." *Id.* cmt. e. In New Mexico, summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Ocana v. Am. Furniture Co.,* 2004–NMSC–018, ¶ 12, 135 N.M. 539, 91 P.3d 58. In other words, the goal at the summary judgment stage is to determine whether there is a viable legal theory and whether there are genuine disputes with regard to the facts that must be proven in order to prevail on that legal theory.

{17} We agree with the Restatement that the meritorious defense analysis is analogous to the summary judgment analysis. As with summary judgment, the point of

requiring a showing of meritorious defense is to ensure that there is a reason to conduct a trial, i.e., to ensure that the movant has a viable legal theory and that there are genuine issues of fact that require submission to a factfinder. *See Sunwest Bank,* 108 N.M. at 214, 770 P.2d at 536 ("The object is to ascertain whether there is some possibility that the outcome of the suit after trial will be different from the result achieved by the default."). Thus, we determine that the *Sunwest Bank* standard is best summarized as follows: parties seeking to set aside a default judgment must assert a valid legal theory and allege with some particularity facts that would support that legal theory; such facts are to be taken as true, but in order to reopen the judgment and proceed to trial, the factual issues presented must be genuine.

{18} In the present case, Defendant argues that the trial court must have ignored the relevant standard from *Sunwest Bank.* It argues that in "light of the overwhelming evidence demonstrating [Defendant's] meritorious defenses, the only reasonable means by which the court below could have denied [Defendant's] motion is by weighing the facts asserted against those asserted by [Plaintiff]." Aside from this conclusory statement, Defendant fails to point to anything indicating that the trial court misapplied the relevant standard. Moreover, Defendant failed to designate any of the transcripts as part of the record on appeal. Plaintiff asserts that the trial court "expressly refrained from weighing facts, and held that there was no meritorious defense shown based on [Defendant's] stated allegations." Under these circumstances, we assume that the trial court followed the controlling law from *Sunwest Bank* and made its ruling based on Defendant's stated allegations. *See State v. Garcia,* 83 N.M. 794, 795, 498 P.2d 681, 682 (Ct.App.1972) ("[U]pon a doubtful or deficient record, every presumption must be indulged by this [C]ourt in favor of the correctness and regularity of the trial court's judgment.").

{19} However, for the reasons that follow, we also hold that the trial court would not have abused its discretion had it refused to rely on some of Defendant's later-pleaded allegations. Defendant's factual allegations have changed significantly over the course of these proceedings. Thus, we take guidance from a recent New Mexico case dealing with changing facts in the summary judgment context. In *Rivera v. Trujillo,* this Court upheld a district court's grant of summary judgment in a case involving an automobile accident. 1999–NMCA–129, ¶¶ 1–2, 12, 128 N.M. 106, 990 P.2d 219. In deposition testimony, one of the plaintiffs had admitted that he "blacked out" prior to the accident. *Id.* ¶ 10. When his attorney asked him what he understood the term "black out" to mean, the plaintiff replied, "More or less passing out, losing consciousness." *Id.* He also agreed that one who blacked out while driving would lose control of the vehicle. *Id.* Then, after the defendant had moved for summary judgment, the plaintiff submitted an affidavit in opposition to the motion. *Id.* ¶ 3. The affidavit stated that at his deposition, the plaintiff had not understood the meaning of the term "black out." *Id.* ¶ 11. The affidavit also asserted that he had only meant to say that he suffered memory loss following the accident, and that he had never intended to say that he lost consciousness prior to the accident. *Id.*

{20} This Court held that the plaintiff's affidavit did not create a genuine issue of material fact. *Id.* ¶ 12. The Court stated that "while it is not the judge's role to weigh the evidence at summary judgment," factual disputes must nonetheless be *"genuine." Id.* ¶ 8. The Court noted that most of the federal circuit courts have held that a plaintiff may not defeat summary judgment by raising a "sham issue of fact." *Id.* ¶ 9. The Court then adopted that doctrine as "consistent with New Mexico law." *Id.* The Court concluded that the allegations in the plaintiff's affidavit were an attempt to create a sham issue of fact: "Such post-hoc efforts to nullify unambiguous admissions under oath will not create a factual dispute sufficient to evade summary judgment." *Id.* ¶ 12.

{21} While we understand that it is not our place to weigh the facts, we hold that, in accordance with *Rivera,* factual disputes in the context of the meritorious defense analysis must be genuine and attempts to create

sham issues of fact will not be sufficient to support reopening the judgment. In this case, as in *Rivera*, we find that the inconsistencies in Defendant's allegations could have led the trial court to believe that Defendant was attempting to create a sham issue of fact. As detailed above, Defendant based its arguments in the initial motion to set aside on Plaintiff's alleged statement that "there was no reason for [Defendant] to get an attorney and file a response to the complaint, and that [Defendant] would have plenty of time to cure the alleged late payments on the promissory note." This alleged statement, however, was nothing more than Defendant's argument, which was in turn based on Mr. Wollmann's affidavit. The affidavit's statements concerning getting an attorney were focused on whether an answer to the complaint needed to be filed, and Mr. Hendricks indicated that if there was no contention that the dollar amount of money owed was incorrect, an answer did not need to be filed. The affidavit continued with Mr. Wollmann affirming that Mr. Hendricks told him that foreclosures "typically" took up to a year or more in New Mexico and for that reason there would be time to cure. An available inference from this affidavit was that Plaintiff was going to continue the suit to foreclosure. There was no promissory language in this affidavit. In Defendant's motion to set aside reinstated default judgment, however, Defendant alleges that Plaintiff "promised," both before and after filing the complaint, not to foreclose.

{22} Defendant's assertions regarding the alleged "promise" not to foreclose are belied by not only its own affidavit but also by the record in this case. As to the allegation that Plaintiff made a promise not to foreclose before filing the complaint, we note the existence in the record of the two demand letters sent from Defendant to Plaintiff. Both letters were sent before the complaint was filed, and Defendant does not deny having received them. The first letter, sent approximately two and one-half months before the complaint was filed, states that the note is in "serious default," and ends by remarking that, "you need to pay off this debt or if not, [Plaintiff] must proceed toward foreclosure." The second letter, sent by Plaintiff's attorney nearly two months prior to the filing of the complaint, states that "[w]e are instructed to inform you that if all amounts due are not paid by ten days from the date of this notice ... we will commence a suit for foreclosure[.]" Thus, Defendant's assertion that Plaintiff had "promised" not to foreclose in the period leading up to the filing of the complaint is simply not plausible. As to Defendant's assertion that Plaintiff filed the complaint and yet simultaneously and subsequently "promised" not to foreclose, we note that Defendant did not make any such allegation in its initial motion to set aside the default judgment. Thus, in accordance with *Rivera*, the trial court would not have abused its discretion had it chosen to disregard that allegation.

{23} In sum, we reiterate our assumption that the trial court accepted all of Defendant's initial factual allegations as true, but we hold that due to the inconsistencies in Defendant's own allegations, the trial court would not have abused its discretion if it had refused to rely on some of Defendant's later-pleaded factual assertions. *Cf. Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171, 91 Cal.Rptr.2d 534, 540 n. 3 (Ct.App. 1999) ("[Plaintiff] may not avoid defects of her earlier pleadings by omitting facts that made the earlier pleadings defective or alleging new facts inconsistent with the allegations of the earlier pleadings.").

{24} We now turn to the specific defenses raised by Defendant. Addressing each in turn, we hold that the trial court did not abuse its discretion in finding these defenses to be non-meritorious.

## Promissory Estoppel

{25} Defendant first asserts that Plaintiff should not have been allowed to foreclose on the property based on the doctrine of promissory estoppel. The elements of promissory estoppel are:

(1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a sub-

stantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice. *Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 628, 916 P.2d 822, 828 (1996). According to Defendant, these elements are satisfied because (1) Plaintiff promised not to foreclose and in reliance on that promise, Defendant did not pay the amount owing, even though it otherwise could and would have; (2) this reliance was reasonable by virtue of the parties' long business history; (3) Plaintiff should have foreseen that Defendant would rely on the promise; and (4) "manifest injustice" will result if the promise is not enforced.

{26} We reject Defendant's argument because neither the initial motion to set aside the default judgment nor any of the documents filed in support of it (affidavit or memorandum of argument) contended that Plaintiff in fact "promised" not to foreclose on the note. Moreover, we are not convinced by Defendant's assertion that it reasonably relied on any promise. As Defendant itself states, its principal owner is "an experienced and prominent Dallas real estate investor" who has "transacted more than $600 million in land development projects." Thus, this is not a case in which one party is susceptible to being easily misled or taken advantage of due to unequal experience or bargaining power. *Cf. Fleet Mortgage Corp. v. Lacy*, No. 87 C 03804, 1990 WL 70852, at \* 3 (N.D.Ill. May 10, 1990) (vacating a default judgment of foreclosure and stating that "[t]he Lacys claim they have put their life savings into the building. We believe equity would be served by allowing the Lacys the opportunity to defend on the merits against the loss of their investment"). In view of the circumstances of this case, we hold that it would have been well within the trial court's discretion to find that no promise was made and even if one were made, Defendant's reliance on it was unreasonable as a matter of law.

{27} We also agree with Plaintiff that any reliance by Defendant on the alleged promise would likely have been unreasonable due to the equivocal and ambiguous nature of most of the statements on which Defendant relies. At the beginning of this litigation, for example, Defendant only asserted (in the affidavit of its Project Manager) that Plaintiff told Defendant that "if [Defendant] did not disagree with the dollar amount sought in the summons, [it] did not need to file an answer." Defendant at this early stage also asserted reliance on Plaintiff's statement that "[Defendant] would have plenty of time to cure the alleged late payments on the promissory note." The implication from this statement was that Plaintiff was proceeding toward foreclosure, and therefore Plaintiff's statement to Defendant was mere opinion as to how long foreclosure would take. Defendant does not allege any specific promissory language on which it relied.

{28} Finally, with regard to the last element of promissory estoppel, we do not believe that "manifest injustice" will result from our refusal to enforce the "promise." As a general matter, we find no injustice in requiring defendants to respond to complaints for foreclosure. We acknowledge that promissory estoppel might be a valid theory in a case where a default judgment defendant alleged from the outset that the plaintiff had made assurances that the foreclosure proceeding was just a formality and should be ignored. This, however, is not such a case.

**Waiver**

{29} Defendant next asserts that Plaintiff's foreclosure claim is barred on a theory of "[w]aiver by acquiescence." Waiver by acquiescence "arises when a person knows he is entitled to enforce a right and neglects to do so for such a length of time that under the facts of the case the other party may fairly infer that he has waived or abandoned such right." *Sisneroz v. Polanco*, 1999–NMCA–039, ¶ 16, 126 N.M. 779, 975 P.2d 392 (internal quotation marks and citation omitted). However, "a trial court should not infer acquiescence from doubtful or ambiguous acts." *Id.*

{30} Defendant argues that Plaintiff waived its right to foreclose by waiting "almost two and one-half years" to file the

complaint. This period of time, Defendant argues, is "a reasonable period of time, under the circumstances, for [Defendant] to fairly infer that [Plaintiff] waived its right to foreclose." Plaintiff points out that the terms of the note and mortgage specifically preclude waiver of rights under those instruments, unless such waivers are in writing and signed by the mortgagee. We do not disagree with Defendant that "[a] written contract may be modified by a subsequent oral agreement, even though the written contract requires that modifications be in writing." *Powers v. Miller*, 1999–NMCA–080, ¶ 8, 127 N.M. 496, 984 P.2d 177. However, in view of the clear provisions in the note and mortgage, we hold that the trial court would not have abused its discretion in finding that, as a matter of law, Defendant could not have "fairly inferred" a waiver based on Plaintiff's statements and actions. We also note that Plaintiff's actions in waiting two and one-half years to foreclose are at best "doubtful and ambiguous" as indicators that it was intending to permanently waive its right to foreclose.

{31} We also agree with Plaintiff that a finding of waiver under these circumstances would have negative policy consequences. As Plaintiff argues,

> if a lender's willingness to negotiate with a debtor regarding a default resulted in ... waiver of its right to pursue its contractual remedies, lenders would refuse to communicate with defaulting borrowers, would refuse to negotiate terms of payment, and would refuse to cooperate with reasonable attempts to sell property securing debts.

## Laches

{32} Next, Defendant argues that Plaintiff was barred from foreclosing based on the doctrine of laches. Laches is an equitable defense under which an action is barred if four elements are present: (1) conduct by the defendant for which the plaintiff seeks a remedy; (2) avoidable delay by the plaintiff in bringing suit; (3) lack of knowledge on the defendant's part that the plaintiff would eventually seek to enforce the right; and (4) "prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred."

*Martinez v. Martinez*, 2004–NMCA–007, ¶ 21, 135 N.M. 11, 83 P.3d 298. We agree with Defendant that the first two elements are met. However, as explained above in our analysis of the waiver defense, we do not see how Plaintiff's actions in waiting some length of time before filing suit for foreclosure could have given Defendant any reasonable expectation that Plaintiff had decided to permanently forego the remedy of foreclosure.

{33} As to the fourth element of laches, Defendant argues that it has been prejudiced because Plaintiff foreclosed on its property and it thereby lost a significant amount of money. We do not agree that this is the type of prejudice contemplated by the doctrine of laches. A defendant who loses a lawsuit is always "prejudiced" in the sense that he or she suffers harm. However, to support a defense of laches, the prejudice alleged must be a result of the delay itself, not merely a result of the suit being brought or the defendant losing the suit. *Brown v. Taylor*, 120 N.M. 302, 306, 901 P.2d 720, 724 (1995) (citing *Garcia v. Garcia*, 111 N.M. 581, 589, 808 P.2d 31, 39 (1991) for the proposition that the "party asserting a laches defense must show injury or prejudice resulting from the delay"). Defendant has offered no reason why it was prejudiced by Plaintiff's delay in filing the action. We thus hold that the trial court did not abuse its discretion in finding that Defendant had not presented a meritorious defense of laches.

## Novation

{34} In the statement of issues in its brief in chief, Defendant lists novation as one of its defenses. Nowhere else does the brief in chief mention novation. *See Stewart v. Lucero*, 1996–NMSC–027, ¶ 8 n. 1, 121 N.M. 722, 918 P.2d 1 ("[P]oints of error identified in the statement of proceedings but neither briefed nor supported by authority [are] considered abandoned."). However, Plaintiff does address novation in its answer brief, and Defendant addresses Plaintiff's arguments in its reply brief. Ordinarily, an issue is abandoned on appeal if it is not raised in the brief in chief. *Barreras v. N.M. Motor Vehicle Div.*, 2005–NMCA–055, ¶ 1, 137 N.M. 435, 112 P.3d 296. However, in the

interest of completeness, we exercise our discretion to briefly address the novation defense.

{35} Novation occurs where the following four elements are present: "1) an existing and valid contract; 2) an agreement to the new contract by all the parties; 3) a new valid contract; and 4) an extinguishment of the old contract by the new one." *Maulsby v. Magnuson*, 107 N.M. 223, 226, 755 P.2d 67, 70 (1988) (internal quotation marks and citation omitted). Defendant appears to argue that (1) it agreed, at Plaintiff's request, to sell the property to a specific buyer; (2) this agreement constituted new consideration, which formed a new contract; and (3) this new contract replaced the old contract that was memorialized in the note and mortgage. In the affidavit accompanying its original motion to set aside the default judgment, however, Defendant's Project Manager made the following statement: "Throughout all these conversations, [Mr. Hendricks] led me to believe that he was content with waiting for the sale of the property to Mr. Sunday or making other arrangements for payment of the outstanding balance in the event that the sale was not completed." To the extent that Defendant now alleges that it promised to sell the property to a specific buyer at Plaintiff's request, we disregard this allegation because it directly contradicts the facts asserted in the Project Manager's affidavit. *Cf. Healthsource, Inc. v. X–Ray Assocs.*, 2005–NMCA–097, ¶ 19, 138 N.M. 70, 116 P.3d 861 (following the Texas rule that "where an obligation in the pleading does not conform to the writing exhibited as a basis thereof, the document rather than the pleading controls."); *see also Freeman*, 91 Cal.Rptr.2d at 540 n. 3 ("[W]e disregard allegations ... contradicted by the express terms of an exhibit incorporated into the complaint. [Plaintiff] may not avoid defects of her earlier pleadings by omitting facts that made the earlier pleadings defective or alleging new facts inconsistent with the allegations of the earlier pleadings." (citation omitted)). Moreover, there was no new consideration for the new contract. Thus, we hold that the trial court did not abuse its discretion in deciding that the defense of novation was non-meritorious as a matter of law.

## Unclean Hands

{36} Defendant next asserts that because foreclosure is an equitable remedy, Plaintiff should be barred from seeking foreclosure on a theory of unclean hands. The doctrine of unclean hands generally prevents a complainant from recovering where he or she "has been guilty of fraudulent, illegal or inequitable conduct in the matter with relation to which he [or she] seeks relief." *Home Savs. & Loan Ass'n v. Bates*, 76 N.M. 660, 662, 417 P.2d 798, 799 (1966).

{37} First, although the parties have not specifically argued this point, it seems unlikely that the defense of unclean hands is applicable under these circumstances. Generally, the doctrine is appropriately invoked only where the complainant "dirtied [his or her hands] in acquiring the right he [or she] now asserts." *Romero v. Bank of the Southwest*, 2003–NMCA–124, ¶ 38, 135 N.M. 1, 83 P.3d 288 (internal quotation marks and citation omitted). Here, there has been no allegation of impropriety in the execution of the note and mortgage. Thus, Plaintiff apparently has done nothing inequitable in "acquiring the right" to foreclose. Second, we note that particular deference is given to trial court rulings involving unclean hands. *See Wolf & Klar Cos. v. Garner*, 101 N.M. 116, 118, 679 P.2d 258, 260 (1984) ("The application of doctrines of 'clean hands' or other such equitable defenses rests in the sound discretion of the trial court. Absent a clear abuse of discretion, the trial court's exercise thereof will not be disturbed on appeal." (citation omitted)). Finally, we note that "equity aids the vigilant, not those who slumber on their rights." *Thompson v. Montgomery & Andrews, P.A.*, 112 N.M. 463, 467, 816 P.2d 532, 536 (Ct.App.1991) (internal quotation marks and citation omitted). Despite Defendant's protestations that Plaintiff led it astray, we do not find it "vigilant" to purposefully ignore a complaint for foreclosure. For all of these reasons, we hold that the trial court did not abuse its discretion in finding that unclean hands was not a meritorious defense to the foreclosure action.

## Cure

{38} Finally, Defendant asserts that "cure," which it defines as "ability to pay," is a meritorious defense in a foreclosure action. Defendant further argues that when Judge Sanchez initially set aside the default judgment, it deposited the total amount alleged to be owing into the court registry. This action, Defendant argues, cured the alleged default "as a matter of law."

{39} Plaintiff first argues that Defendant's cure argument was not properly preserved for appeal because it was not raised in the Motion to Set Aside Reinstated Default Judgment. In order to preserve an issue for appeal, the issue must have been raised before the trial court such that it "appear[s] that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). Because Judge Nelson's "Order Denying Ski Rio's Motion to Set Aside Reinstated Default Judgment" is the final order that we are reviewing in this appeal, we would tend to agree with Plaintiff that Defendant did not "fairly invoke[ ] a ruling of the trial court" with regard to its cure defense. However, because Defendant did raise the cure defense in its original motion to set aside the default judgment, we will briefly address it.

{40} Plaintiff argues that even if the cure defense was preserved, it fails as a matter of law because default is cured by tender, and not by the mere ability to pay or even an offer to pay. We agree. In *Miller v. Johnson,* 1998–NMCA–059, 125 N.M. 175, 958 P.2d 745, we held that buyers under a real estate contract had failed to cure a default. *See id.* ¶ 2. The real estate contract at issue in *Miller* provided that all defaults had to be cured within thirty days. *Id.* ¶ 7. On the last day on which the default could be cured, the buyers' attorney was informed by the escrow agent that payment would not be accepted without a written statement from the sellers indicating that repairs to the property had been performed. *Id.* ¶ 11. The buyers' attorney called the sellers' attorney and said that funds were available to pay the total amount due, but that the escrow agent would not accept the money. *Id.* ¶ 12. However, the buyer did not actually deliver any funds within the time for curing default. *Id.* We held that these actions did not constitute a tender sufficient to cure the default. *Id.* ¶ 22.

{41} We defined tender as follows: "Tender is an offer to perform coupled with the present ability of immediate performance, so that the obligation could be satisfied but for the other party's refusal to cooperate." *Id.* ¶ 21. We then held that tender had not occurred:

It is undisputed that Buyers did not deliver a check to pay the default in the monthly installments prior to the expiration of the cure period. The offer to deliver a check merely evidences an intention and does not constitute a tender, since the offer to deliver a check, as opposed to the presence of a check in the default amount, does not satisfy Buyers' obligation to cure the payment defaults.

*Id.* ¶ 22. In view of our holding in *Miller,* we agree with Plaintiff that having the ability to pay and depositing money in the court registry only after a judgment of foreclosure has been set aside are not actions sufficient to constitute cure.

{42} In support of its cure argument, Defendant cites two cases from other jurisdictions that do not support its position. *See Sanders v. Kerwin,* 413 N.E.2d 668, 671 (Ind. Ct.App.1980) (holding that the allegation that only $275 dollars was owed is a meritorious defense to a claim for $475); *James V. Zelch, M.D., Inc. v. Reg'l MRI of Orlando, Inc.,* No. 81826, 2003 WL 1393743, ¶ 17 (Ohio Ct.App. March 20, 2003) (vacating default judgment when the defendant had shown a meritorious defense by attaching to the motion a settlement agreement that purported to release the defendant from all liability).

{43} Defendant does point to one unpublished federal district court decision that appears to support the argument that "ability to pay" is a defense to an action for foreclosure. *Fleet Mortgage Corp.,* 1990 WL 70852, at *3. In *Fleet Mortgage Corp.,* the defendants defaulted on payments due on their home mortgage. *Id.* at *1. The mortgage

company filed a foreclosure complaint, and at least one of the defendants admitted that she had been personally served with a summons and complaint, but asserted that she "did not know what to do" and did not understand that a default judgment would be entered if she did nothing. *Id.* at *1. When the defendants failed to respond to the complaint, a default judgment of foreclosure was entered and the mortgage company purchased the property at the foreclosure sale. *Id.* In support of their motion to vacate the default judgment, the defendants submitted affidavits stating that they were "ready, willing and able to pay" the money owed because they now had "access to the necessary funds." *Id.* at *3. The court vacated the default judgment, holding that ability to pay was a viable defense and that the affidavits "provide[d] a sufficient factual basis for the [Lacy's] defense." *Id.* We note that there is no indication in the *Fleet Mortgage Corp.* case that the defendants at any point actually tendered the money owing to the mortgage company. Rather, they relied solely on their ability to pay.

{44} We decline to follow *Fleet Mortgage Corp.* While the result in that case may have been justified by the particular circumstances present, we believe that adoption of "ability to pay" as a generally available defense to foreclosure would have negative policy consequences. If that were the rule, a foreclosure defendant could simply ignore the complaint, allow a default judgment to be entered, spend time gathering funds, and then move to have the default judgment set aside on the basis that the default could now be "cured." Of course, such a defendant would still be required to show grounds to set aside the judgment under Rule 1–060(B). *See Sunwest Bank,* 108 N.M. at 213, 770 P.2d at 535 ("A party seeking relief from a default judgment must show the existence of grounds for relief under Rule 1–060(B), and a meritorious defense."). But the practical effect of adopting the "ability to pay" defense would be to eliminate the meritorious defense requirement as to default judgments of foreclosure. Thus, we hold that the trial court did not abuse its discretion in finding that cure under the factual circumstances of this case is not a meritorious defense to a foreclosure action.

## CONCLUSION

{45} We hold that the trial court did not abuse its discretion in finding that none of Defendant's proffered defenses were meritorious. Thus, we affirm the trial court's order refusing to set aside the default judgment.

{46} Plaintiff's request for attorney fees, as provided in the note and mortgage, is granted. Plaintiff may either ask this Court to set an amount by motion providing this Court with sufficient information to make an award, *see* Rule 12–403(B)(3) NMRA for time limits, or Plaintiff may have the district court set an amount in its judgment or the mandate.

{47} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.