PERALTA V. BRITT

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**MANUEL PERALTA,**
**Plaintiff-Appellee,**
**v.**
**SHARON MAE BRITT f/k/a SHARON, MAE JOJOLA also f/k/a SHARON M., JOJOLA,**
**Defendant-Appellant.**

Docket No. A-1-CA-35824
COURT OF APPEALS OF NEW MEXICO
March 13, 2019

APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY, Kevin R. Sweazea, District Judge

**COUNSEL**

Lori Bauer Apodaca, Los Lunas, NM, for Appellee,

Deschamps Law Firm, LLC, Lee Deschamps, Philip P. Chandler, II, Socorro, NM, for Appellant.

**JUDGES**

JENNIFER L. ATTREP, Judge. WE CONCUR: M. MONICA ZAMORA, Chief Judge, JULIE J. VARGAS, Judge

**AUTHOR:** JENNIFER L. ATTREP

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Defendant Sharon Britt appeals the district court's judgment, arguing the district court erred in granting Plaintiff Manuel Peralta's motion for summary judgment, awarding restitution to Peralta for past payments he made in support of Britt's child (Child), and vacating a prior default judgment determining paternity and ordering child support. Based on Britt's representations to the New Mexico Human Services

Department (HSD), the district court in the original parentage and child support case entered a default judgment declaring Peralta the father of Child and ordering Peralta to make monthly payments to Britt on behalf of Child. Many years later, a genetic test revealed Peralta was not Child's father. Peralta subsequently filed suit against Britt, and the district court ultimately ruled in his favor. On appeal, Britt raises various arguments, which we consolidate and address as three principal contentions: (1) she contends any misrepresentations she made were immaterial and neither HSD nor Peralta could reasonably rely on them; (2) she maintains that Peralta's action for relief was untimely; and (3) she argues that relief is barred by the equitable defenses of laches, unclean hands, and estoppel. We affirm.

## BACKGROUND

{2}     Britt and Peralta had an intimate relationship in the few years preceding Child's birth in February 1990. At the time Child was conceived, Britt had a sexual relationship with another man. Britt did not disclose the relationship to Peralta and told Peralta that he was Child's biological father. When Child was born, Britt sought assistance from HSD to establish support for Child's upbringing. Britt represented to HSD that Peralta was Child's father and that there were no other possible fathers. HSD initiated a paternity action against Peralta and served him with process, but he entered no appearance or responsive pleading. In November 1990, the district court entered a default judgment adjudicating Peralta the father of Child and requiring him to pay $300 per month in child support. Peralta made payments as ordered, even though there were times when he did not make enough money to support himself.

{3}     Peralta never formed a relationship with Child, and, over time, he questioned whether Child was his. Peralta attempted to secure a paternity test with the assistance of Britt and HSD, but neither party was receptive. Fifteen years after Child was born, Britt established a relationship with Edward Britt, who sought to adopt Child. In the course of the adoption proceedings, Peralta's paternity was tested. The results, which the parties received in September 2005, revealed a "zero percent chance" Peralta was Child's father. After the district court entered an adoption decree, HSD acknowledged Peralta was not Child's father and stopped seeking any prospective support from him.

{4}     Peralta made support payments to Britt totaling approximately $48,000 over the years. Peralta sought the assistance of several attorneys to obtain restitution of those payments but was unable to afford the quoted retainers. Eventually, in August 2008, Peralta, with the assistance of an attorney, filed a complaint against Britt, HSD, and Edward Britt.[1] Peralta styled his complaint as an independent action for relief from a judgment, but also made reference to Rule 1-060(B) NMRA, which allows in certain circumstances for relief from a judgment by motion in the original action. The complaint set forth various causes of action and requested that the default judgment be set aside and that Peralta be awarded amounts he had paid to Britt in child support. The case progressed slowly in district court, with the court ultimately granting summary judgment

---

1HSD was dismissed from the lawsuit when Peralta and HSD reached a settlement agreement. Edward Britt also was dismissed when he was excluded as Child's biological father.

in Peralta's favor, awarding him restitution of child support payments made to Britt, and vacating the default judgment entered in the original parentage proceeding. The district court's resolution of this case was based on our decision in *State ex rel. Human Servs. Dep't v. Rawls*, 2012-NMCA-052, 279 P.3d 766, which was issued during the pendency of the case below.

**DISCUSSION**

**I.      Applicable Law and Standard of Review**

**{5}**      We agree with the district court that *Rawls* is applicable to this case. *Rawls* involved a misattribution of paternity in which the putative father, notwithstanding his doubts, entered a stipulation of paternity sometime after entry of default judgment against him. 2012-NMCA-052, ¶¶ 2, 3. Five years after the default judgment, a paternity test revealed Rawls was not the child's father, and he moved in the original action to set aside the default judgment under Rule 1-060(B). *Rawls*, 2012-NMCA-052, ¶¶ 3, 4. The district court denied Rawls relief. *Id.* ¶¶ 4-5. This Court analyzed Rawls' claim under Rule 1-060(B)(6), which requires the motion be made in a "reasonable time" and a showing of "extraordinary circumstances." *Rawls*, 2012-NMCA-052, ¶ 13. We reversed the district court, emphasizing that "[t]he unique circumstances of [the] case raise a significant issue as to the fairness of requiring a person to pay child support when he is unerringly determined not to be the biological father of a child and found to have had no personal relationship with the child." *Id.* ¶ 12. This Court concluded that a "change from a mistaken admission of paternity to proof of non-paternity qualifies as an extraordinary change of circumstance sufficient to permit Rule 1-060(B)(6) relief from a child support obligation[,]" and we set aside the default judgment and stipulated order, thereby relieving Rawls of his obligation to make any future payments. *Id.* ¶¶ 17, 19.

**{6}**      Additionally in *Rawls*, this Court imported an analysis from *Wheat v. Commonwealth*, 217 S.W.3d 266 (Ky. Ct. App. 2007), which provided that a misdesignated father may be relieved of an accrued child support obligation where a parent has engaged in fraud or misrepresentation to secure a paternity adjudication. *Rawls*, 2012-NMCA-052, ¶ 20. In making a determination of fraud or misrepresentation, this Court examined the five elements in *Wheat*: (1) whether "the mother had made a material representation," (2) "which was false," (3) "which was either known to be false or which was made recklessly," (4) "which was made with an inducement to be acted upon," and (5) "was relied upon thereby causing the injury." *Rawls*, 2012-NMCA-052, ¶ 20. After determining the *Wheat* elements were met, we additionally ordered that Rawls be relieved of any obligation "to pay accrued child support[.]" *Id.* ¶¶ 21, 23.

**{7}**      In granting Peralta's motion for summary judgment in this case, the district court concluded that *Rawls* allowed for relief, even for support obligations already satisfied, and that the *Wheat* elements were undisputed. We review the district court's grant of summary judgment de novo. *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2017-NMSC-010, ¶ 17, 390 P.3d 174. We view the facts in the light most favorable to Britt, who opposes summary judgment, and draw all reasonable inferences in support of trial

on the merits. *See id.* We will affirm a grant of summary judgment where there exists no genuine issue with respect to any material fact and we conclude the moving party is entitled to judgment as a matter of law. *Id.*

**{8}** Although Peralta's claims were brought as an independent action and resolved on summary judgment, *Rawls*, as noted, addressed a motion for relief under Rule 1-060(B), and the parties have made various arguments in district court and on appeal based on *Rawls* and Rule 1-060(B). The parties do not contend that the analysis in this case should depart from *Rawls* because this is an independent action, nor do we address this possibility here. We generally review rulings on Rule 1-060(B) motions for abuse of discretion. *Rawls*, 2012-NMCA-052, ¶ 8. Where an issue, however, requires us to determine whether the district court misapprehended the applicable law or correctly applied the law to the facts at hand, we review the issue de novo. *Id.* Because the dispute here revolves around the district court's application of *Rawls* to circumstances undisputed by the parties, our review is de novo.

## II. The District Court Did Not Err in Concluding That Britt's Representations Were Material and That Peralta and HSD Were Entitled to Rely on Them

**{9}** Britt does not challenge that, by extension, *Rawls* and *Wheat* permit restitution of child support payments upon a showing of fraud or misrepresentation. And Britt concedes on appeal that the "representations [she] made to HSD were false (though unknowingly)[,] that, uncertain of their veracity, she made them recklessly[, and] that . . . HSD and the [district] court . . . were induced to act as Britt had hoped." Britt nevertheless questions whether her representations were material and whether HSD and Peralta could reasonably rely on them. In particular, she argues, without citing authority, that her representations were not material because they were not made directly to Peralta, but instead to HSD. Britt next contends, again without citing any authority, that it was unreasonable for HSD and Peralta to rely on her representations without further investigation due to the intimate nature of the representations and because Peralta questioned his paternity early on.

**{10}** Upon an examination of *Rawls*, Britt's arguments fail. First, *Rawls* focused on the mother's misrepresentation to HSD and HSD's reliance thereon, observing that HSD had "acted upon" the mother's "representation to file a petition to name Rawls as the father of [the c]hild." *Rawls*, 2012-NMCA-052, ¶ 21 (alterations, internal quotation marks, and citation omitted). The Court concluded this was enough to satisfy any materiality and reliance requirements in *Wheat. See Rawls*, 2012-NMCA-052, ¶ 21. Britt's contention to the contrary, particularly without reference to any legal support, is thus unavailing. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Second, *Rawls* appeared to accept the possibility that HSD and a putative father might both rely on the mother's representation even where the putative father has doubts about paternity. *See id.* ¶¶ 16, 21. And Britt has offered no basis for distinguishing Peralta's early doubts from those the putative father had in *Rawls*.

**{11}** Based on the principles established in *Rawls* as applied to the undisputed facts in this case, we conclude the district court did not err in concluding that Britt's misrepresentations were material and that HSD and Peralta were entitled to rely on them.

### III. The District Court Did Not Err in Determining the Action Was Timely Under the Circumstances

**{12}** Britt additionally argues that Peralta's action for relief was not timely filed within Rule 1-060(B)(6)'s reasonable time requirement, given that it came nearly eighteen years after Child's birth. "What constitutes a reasonable time [under Rule 1-060(B)(6)] depends on the circumstances of each case." *Meiboom v. Watson*, 2000-NMSC-004, ¶ 23, 128 N.M. 536, 994 P.2d 1154 (internal quotation marks and citation omitted). Various considerations guide the inquiry, including "the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice if any to other parties." *Id.* ¶ 24 (alterations, internal quotation marks, and citation omitted); *see also Apodaca v. Tome Land & Improvement Co. (NSL)*, 1978-NMSC-018, ¶ 31, 91 N.M. 591, 577 P.2d 1237 (observing that, in other equitable relief contexts, "lapse[s] of time alone do[] not necessarily imply an unreasonable delay in bringing suit, but it must also appear that the delay has worked to the injury of another" (alteration, internal quotation marks, and citation omitted)). Whether the statute of limitations governing the claim giving rise to the request for relief has expired may also guide the reasonableness analysis. *Meiboom*, 2000-NMSC-004, ¶ 26.[2]

**{13}** Although the parties have not explicitly addressed the possibility, Rule 1-060(B)(6)'s reasonable time requirement likely requires both timeliness in uncovering the ground for relief and timeliness in seeking relief once the ground has been discovered. *See* Restatement (Second) of Judgments § 74 (Am. Law Inst. 1982) (explaining relief from a judgment may be denied if "person seeking relief failed to exercise reasonable diligence in discovering the ground for relief, or after such discovery was unreasonably dilatory in seeking relief"). The eighteen-year lapse Britt has identified here may thus be more appropriately viewed and analyzed as a fifteen-year period before the misrepresentation was discovered, and an ensuing three-year period before Peralta initiated his action for relief.

**{14}** With respect to the initial fifteen-year period, Britt has offered no basis to distinguish it from the five-year period that elapsed before discovery of the misrepresentation in *Rawls*, other than to say that the fifteen-year period is longer. *See Rawls*, 2012-NMCA-052, ¶ 18 (observing that, "notwithstanding a nine-year delay in

---

[2] Whether these considerations apply in the same manner in an independent action for relief is a question left unaddressed by the parties. Because the parties have given us no reason to distinguish, and no authority distinguishing, the standards we apply in independent actions from the standards we apply to Rule 1-060(B)(6) motions, we assume for purposes of this case that the standards apply in the same way and address only the arguments raised, which have focused on the Rule 1-060(B)(6) timeliness principles. See Curry, 2014-NMCA-031, ¶ 28.

requesting relief, and the [putative father's] failure to submit to DNA testing earlier," Mississippi Supreme Court held that "it was profoundly unjust to require [the putative father] to continue making child support payments for a child which is known not to be his and thereby ordering the trial court to set aside the paternity and child support order" (internal quotation marks and citation omitted) (citing with approval *M.A.S. v. Miss. Dep't of Human Servs.*, 842 So.2d 527, 528, 531 (Miss. 2003) (en banc))). Britt offers no challenge to the undisputed fact that Peralta sought to investigate his paternity at times during that fifteen-year period with the assistance of both HSD and Britt, but neither was willing to help him secure a test.[3] In addition, Britt offered no evidence in the district court that she, HSD, Child, or any other affected party suffered prejudice as a result of Peralta's delay, nor has she challenged the district court's determination that she offered no such evidence. *See Meiboom*, 2000-NMSC-004, ¶ 24 (highlighting consideration of prejudice to other parties in determining reasonableness); *Apodaca*, 1978-NMSC-018, ¶ 31 (requiring showing of prejudice in equitable analysis).

**{15}** With respect to the three-year period after discovery of the misrepresentation, Britt again offered no evidence of prejudice resulting from Peralta's delay in initiating the action. *See Meiboom*, 2000-NMSC-004, ¶ 24; *Apodaca*, 1978-NMSC-018, ¶ 31. Moreover, had Peralta initiated a new action for fraud based on the newly-discovered information, the statute of limitations would have given him four years to do so. *See* NMSA 1978, § 37-1-4 (1880); *cf. Meiboom*, 2000-NMSC-004, ¶ 26 (concluding timeline was unreasonable in part because "the statute of limitations had expired several months before" motion for relief was filed). Further, while we acknowledge that as a general rule a claimant's poverty may not excuse delay in enforcing a right, in certain circumstances "poverty may excuse delay in filing suit if there is a clear showing of poverty and of diligent efforts to overcome financial barriers." 30A C.J.S. *Equity* § 154 (2007) (noting that "if plaintiff has been diligent then he or she has not slept on his or her rights and laches does not bar his or her cause of action"). Peralta presented evidence that he sought help from various attorneys but could not afford the retainers, and that he initiated this action upon finally retaining an attorney. Britt advanced no evidence to the contrary, nor has she argued that it was error for the district court to consider Peralta's financial position.

**{16}** Given the undisputed facts on reasonableness and the lack of any record made on prejudice, we conclude the district court did not err in determining that Peralta's action satisfied any timeliness requirement imposed by Rule 1-060(B)(6).

## IV. Britt's Remaining Equitable Arguments Are Unavailing

---

[3]Britt asserts, without any record citation, that Peralta knew within a year of Child's birth that he was not the father and therefore his delay in taking action was unreasonable. The only citation in Britt's brief that could possibly be construed to support this contention is a 1991 letter Peralta purportedly wrote to HSD in which he requested an attorney and paternity test and stated that "[Britt] verbally admitted to me that [Child] is not mine but still refuses to take a blood test." Yet, when citing this letter at another point in her briefing, Britt questions whether she made such an admission to Peralta. Regardless, the district court ordered this letter stricken when it denied Britt's motion for reconsideration of the grant of summary judgment, and Britt has not appealed this ruling. We therefore do not give it any further consideration.

**{17}** Britt relies on various equitable doctrines, such as laches, unclean hands, and equitable estoppel, to argue that the district court's restitution award was inequitable. First, a laches defense requires that Britt establish injury or prejudice resulting from Peralta's delay in initiating the action, and as noted, she presented no evidence of prejudice to the district court. *See Magnolia Mountain Ltd., P'ship v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶¶ 32-33, 139 N.M. 288, 131 P.3d 675 ("[The d]efendant has offered no reason why it was prejudiced by [the p]laintiff's delay in filing the action."); *see also Cain v. Cain*, 1978-NMSC-014, ¶¶ 3, 11, 91 N.M. 423, 575 P.2d 607 (reversing a ruling that laches applied to ex-husband's claim that he thought his alimony obligation lasted only a year where his ex-wife failed to enforce alimony payments for eighteen years and holding there was no substantial evidence of an unreasonable delay prejudicing the ex-husband).

**{18}** Second, to prevail on an unclean hands defense, Britt must establish that Peralta "dirtied" his hands "in acquiring the right he now asserts." *See Romero v. Bank of the Sw.*, 2003-NMCA-124, ¶ 38, 135 N.M. 1, 83 P.3d 288 (internal quotation marks and citation omitted). In claiming unclean hands, Britt relies on the argument that Peralta doubted his paternity from early on but continued to make child support payments. As noted, Britt has offered no basis for distinguishing Peralta's doubts from the similar doubts harbored by the putative father in *Rawls*. And she has presented no authority in support of the notion that Peralta's payments in compliance with a court order may constitute inequitable conduct based on his early-arising doubts, and we assume none exists. *See Curry*, 2014-NMCA-031, ¶ 28.

**{19}** Finally, with respect to the defense of estoppel, we must evaluate whether Britt "relied to [her] detriment" on Peralta's conduct, such that it would be inequitable to award Peralta relief for a right he might otherwise assert. *See Brown v. Taylor*, 1995-NMSC-050, ¶ 10, 120 N.M. 302, 901 P.2d 720. Britt again advances the notion that Peralta acquiesced in the paternity judgment and implicitly waived his right to recovery by making payments over the years and for such a duration that she reasonably believed he would no longer assert his right. But, as Britt acknowledges and the district court found, it is undisputed that Peralta questioned his paternity, seeking both the assistance of Britt and HSD in securing a paternity test. Further, Britt offered no evidence to the district court that she relied on Peralta's continued payments to her detriment or that she was otherwise prejudiced. *See Brown*, 1995-NMSC-050, ¶ 12 (noting "the party asserting the defense [of estoppel] must demonstrate prejudice, and for such purposes, prejudice cannot be inferred merely from the passage of time" (internal quotation marks and citation omitted)); *see also Sisneroz v. Polanco*, 1999-NMCA-039, ¶¶ 11-18, 126 N.M. 779, 975 P.2d 392 (holding mother's inaction in establishing paternity and pursuing child support for eleven years did not constitute an unequivocal act of waiver or acquiescence).

**{20}** At its core, Britt's argument on appeal is that it is inequitable or unfair to order her to make restitution. We recognize, as did the Court in *Rawls*, the very significant policy interests favoring the finality of judgments and disfavoring the potential harms to HSD and Child in scenarios like these, and the various equitable considerations that may

weigh against Peralta. *See Rawls*, 2012-NMCA-052, ¶ 12. *Rawls*, however, highlighted the important countervailing consideration of "the fairness of requiring a person to pay child support when he is unerringly determined not to be the biological father of a child and found to have had no personal relationship with the child." *Id.* And in the absence of a showing of harm to the child, *Rawls* determined that these circumstances may often compel a conclusion that the fairness question favors the misdesignated father over the mother who "mistakenly or intentionally" identifies him as the father. *See id.* ¶ 22. On the undisputed record here, we conclude the district court did not err in weighing the equities in favor of Peralta.

**CONCLUSION**

**{21}** We affirm the district court's judgment.

**{22}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JULIE J. VARGAS, Judge**