**Certiorari Granted, December 19, 2014, No. 34,993**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-004**

**Filing Date:  October 24, 2014**

**Docket No. 32,666**

**T.H. MCELVAIN OIL & GAS LIMITED PARTNERSHIP,**
**a New Mexico limited partnership; KAREN ANN HANDLEY**
**ANDERSON, an individual; SUSAN R. HANDLEY MCGREW,**
**an individual; BILLIE L. PHILLIPS, an individual; BILLIE L.**
**PHILLIPS RECOVERABLE TRUST DATED APRIL 23, 1996,**
**BILLIE L. PHILLIPS TRUSTEE, JUDY LYNN QUINT, an**
**individual; RONALD CHARLES WEEBER, an individual;**
**LUCILE ALICE NORTHCOTE TRUST DATED MAY 29, 1996,**
**BILLIE L. PHILLIPS, SUCCESSOR TRUSTEE,**

       **Plaintiffs-Appellants,**

**v.**

**GROUP I: BENSON-MONTIN-GREER DRILLING CORP., INC.,**
**a Delaware corporation; ELIZABETH JEANNE TURNER CALLOWAY,**
**an individual; KELLY R. KINNEY, an individual; KATHERINE P. MILLER, an**
**individual; RONALD MICHAEL MILLER, an individual;**
**VICKIE ROANN MILLER, an individual; THOMAS R. MILLER, an individual;**
**FRED E. TURNER, LLC, a Delaware limited liability company; JOHN LEE**
**TURNER, an individual; LINDA VOITL a/k/a LINDA DAVIS, an individual;**
**ESTATE OF WILLIAME G. WEBB, deceased, JOHN G. TAYLOR, independent**
**executor,**

**GROUP II: CHERYL U. ADAMS, an individual; E'TWILA J. AXTELL, an**
**individual; BP AMERICA PRODUCTION COMPANY, a Delaware**
**corporation; COASTAL WATERS PETROLEUM COMPANY, INC., a Louisiana**
**corporation; ENERGEN RESOURCES CORPORATION, an Alabama corporation;**
**THE ESTATE OF ANNE B. LITTLE, FIRST SECURITY BANK OF NEW MEXICO,**
**as personal representative; LANA GAY PHILLIPS, an individual; HENRIETTA**
**SCHULTZ, an individual; THE FRANK AND HENRIETTA SCHULTZ**
**REVOCABLE TRUST DATED JANUARY 2, 1990, HENRIETTA SCHULTZ**
**TRUSTEE; SCHULTZ MANAGEMENT LTD., a Texas limited partnership; J.**
**GLENN TURNER, JR. LLC, a Delaware limited liability company; MARY FRANCES**

**TURNER JR. TRUST, JP MORGAN CHASE BANK, NA TRUSTEE,**

**GROUP III: ALL UNKNOWN CLAIMANTS OF INTEREST IN THE PREMISES ADVERSE TO THE PLAINTIFFS,**

    **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Dufford & Brown, P.C.
Herbert A. Delap
Denver, CO

Cuddy & McCarthy, LLP
John F. McCarthy Jr.
Arturo L. Jaramillo
Santa Fe, NM

for Appellants

Gallegos Law Firm, P.C.
J.E. Gallegos
Michael J. Condon
Santa Fe, NM
Briones Law Firm, P.A.
Felix Briones Jr.
Farmington, NM

for Appellees Henrietta Schultz, The Frank and Henrietta Schultz Revocable Trust, Henrietta Schultz Trustee, Schultz Management Ltd., Elizabeth Jeanne Turner Calloway, Fred E. Turner, LLC, John Lee Turner, J. Glenn Turner, Jr. LLC, Mary Frances Turner Jr. Trust, JP Morgan Chase Bank, N.A. Trustee, and Benson-Montin-Greer Drilling Corp., Inc.

Miller Stratvert P.A.
Dylan O'Reilly
William T. Denning
Farmington, NM

for Appellees E'Twila J. Axtell, Lana Gay Phillips, and Cheryl U. Adams

## OPINION

**SUTIN, Judge.**

**{1}** The Opinion filed in this case on October 16, 2014, is withdrawn and the following Opinion is substituted in its place.

**{2}** This case presents a difficult issue of whether constructive notice of an action to quiet title to property, including underlying oil and gas interests located in San Juan County, New Mexico, was effective. Title was quieted in 1948 to property in which the oil and gas interests had been reserved by the grantors of the property in a 1928 warranty deed. Presumably unbeknownst to the grantors who had reserved their oil and gas interests, the decree quieted title to those oil and gas interests in favor of the quiet title plaintiff whose title clearly stemmed from a warranty deed that contained the reservation.

**{3}** Evidence indicated that the quiet title plaintiff knew or should have known in 1948 that the grantors who reserved the oil and gas interests resided in San Diego, California at the time of the 1928 deed. Evidence also indicated that upon inquiry in San Diego, the quiet title plaintiff may have been able to locate the grantors. Yet, service of process was obtained solely through constructive notice published in a local San Juan County newspaper with no attempt shown in the record to discover the location of those grantors for personal service or to otherwise give notice of the action to those grantors.

**{4}** In 2002 a group searching for locations to pursue oil and gas exploration discovered, by examining the chain of title to the property, that the oil and gas interests had been reserved by the 1928 warranty deed before the 1948 quiet title action. Based on that discovery, the group was able to locate heirs (the Wilson heirs) to the reserved interests with the result that Plaintiffs sued the heirs of the quiet title plaintiff's purchasers to establish the Wilson heirs' ownership rights in the reserved oil and gas interests. From an unfavorable district court summary judgment, Plaintiffs appeal, contending that the constructive notice was not effective to permit adjudication of their reserved interests and thus violated due process. We conclude that the Millers failed to undertake a good faith effort to provide the Wilson heirs adequate notice of their 1948 quiet title suit. We, therefore, reverse the district court's grant of summary judgment to Defendants and remand for further proceedings.

## BACKGROUND

**{5}** Plaintiff T.H. McElvain Oil & Gas Limited Partnership (McElvain) entered into a mineral lease agreement in 2002 with the Wilson heirs, specifically, Judy Lynn Quint and Ronald Charles Weeber, pertaining to the mineral interests associated with 160 acres of property in San Juan County (the property). Ms. Quint, Mr. Weeber, and a number of other individuals, are heirs of one of the original grantors, Mabel G. Wilson (later known by her married name, Weeber). Mabel Weeber, who, along with her mother and father, Eva C. Wilson and Judson Wilson (the Wilsons), sold the property to David Miller in 1928, reserving in their warranty deed to David Miller the "oil and gas existing or found" on the property. McElvain and the Wilson heirs are Plaintiffs in the present case.

**{6}** The property consists of 160 acres lying beneath the surface of Navajo Lake in San

Juan County. In 1927 the Wilsons, as joint tenants, acquired a general warranty deed to the property from W.W. McEwen. The 1927 deed from McEwen to the Wilsons listed "Judson Wilson and Eva C. Wilson and Mabel G. Wilson of San Diego, California" as purchasers of the property. When the Wilsons conveyed the property to David Miller in 1928, the warranty deed contained the following express exception and reservation:

> excepting and reserving to the grantors herein the oil and gas existing or found therein, with the right to enter on for prospecting or developing same, provided they must pay all damage to land or crops in prospecting or development.

The deed from the Wilsons to David Miller was recorded in San Juan County in 1928.

{7}     By a 1931 quitclaim deed, David Miller conveyed his interest in the property to his brother, Thomas Miller, who had paid one-half of the purchase price for the property at the time that David Miller purchased it from the Wilsons. The quit claim deed executed by David Miller, in which he conveyed his interest in the property to Thomas Miller was recorded in 1937, four days after David Miller's death. By a 1948 quiet title action in the San Juan County district court, Thomas Miller was adjudged to be the fee simple owner of the property.

{8}     The numerous named Defendants in the present case were the various lessees and lessors of the mineral interests in the property whose interests stemmed from Thomas Miller's fee simple ownership in the property. The district court appointed a special master "to assist . . . in determining the ownership of the mineral rights[.]" The following background is based on the special master's statement of undisputed facts.

{9}     Judson Wilson died in 1929, and Eva Wilson died in 1944. By the time that Eva Wilson died, Mabel Wilson had married and changed her name to Mabel Weeber. Mabel Weeber, the remaining joint tenant in the 1927 warranty deed to the property, died in 1970.

{10}     In October 1948, Miller filed a quiet title action in the district court for San Juan County alleging, in relevant part, that he was the fee simple owner of the property. In his complaint to quiet title in the property, Miller named Judson Wilson, Eva Wilson, and Mabel Wilson, along with other individuals who are not relevant to this appeal, as defendants "if living, or if deceased, by their unknown heirs." Miller's complaint included a sworn statement by Miller's attorney that, in relevant part, the Wilsons' heirs were "unknown to . . . Plaintiff, and Plaintiff [had] been unable to learn or determine the names, places of residence, [p]ost [o]ffice addresses[,] and whereabouts of the . . . unknown heirs[] after diligent search and inquiry[.]" Additionally, the San Juan County Sheriff submitted a sheriff's return stating that he had "diligently searched and inquired for the [Wilsons]," but "after such search and inquiry, [was] unable to find [them] in San Juan County . . . and [was] unable to find [their p]ost [o]ffice addresses, places of residence, or whereabouts[.]"

4

**{11}** Miller served the Wilsons and their heirs (hereinafter, the Wilsons) with notice of his quiet title action by publication in a Farmington, New Mexico newspaper for four successive weeks. The Wilsons did not respond to the notice. On December 20, 1948, the district court entered judgment quieting title to the property in favor of Miller. In its judgment, the court determined "that after [a] diligent search and inquiry[,] the post office addresses, places of residences, and whereabouts of . . . the [d]efendants" were "unknown"; and, therefore, the defendants could not "be personally served with process in this cause." The judgment concluded that Miller was the owner of the property in fee simple title.

**{12}** In 1950 Miller conveyed the property to V.H. McRee, but reserved three-fourths of the mineral rights therein. In 1953 Miller and McRee entered into oil, gas, and mineral leases; as of September 24, 2012, those leases remained in effect. The heirs of McRee's purchasers, who are Defendants in this case, claim royalty interests from those leases.

**{13}** After Mabel Weeber's death in 1970, her estate, which was probated in San Diego, did not identify or include any interest in any New Mexico property. Mabel Weeber's husband, Charles Weeber, died in 1978; his estate also did not mention any interest in any New Mexico property.

**{14}** Between 1928, when they deeded the property to David Miller, and 2002, when a landman representing McElvain wrote a letter to Judy Lynn Quint and Ronald Charles Weeber informing them that they were the "current owners of the oil and gas" under the property, neither the Wilsons nor their heirs took any action in regard to the property. By September 2012, the mineral interests in the property were valuable because in 2007 Energen Resources, a named Defendant in this case, successfully drilled under Navajo Lake, thus including the property in two Fruitland coalbed well spacing units.

**{15}** In September 2010, Plaintiffs (the Wilson heirs and McElvain) filed a lawsuit against Defendants (McRee's purchasers' heirs and their mineral lessors) seeking a declaration that, owing to the Wilsons' 1928 oil and gas reservation, Defendants were barred and enjoined from asserting any claim to the mineral interests in the property, and seeking a decree quieting title in Plaintiffs' favor to all of the mineral interests in the property. Defendants answered and also filed counterclaims seeking a declaration of certain Defendants' ownership of the mineral interests in the property. All of the parties moved for summary judgment.

**{16}** Owing to "the highly complex issues contained" in the case, the district court determined that it was necessary to appoint a special master "who has an expertise in dealing with the specific issues of determining the ownership of mineral rights." Ultimately, the parties chose a retired New Mexico District Court judge to serve as special master in this case. We are not made aware of whether the special master held any evidentiary or other hearing. The special master filed a report on September 24, 2012.

**{17}** In his report, the special master identified the central issue in the case as "the validity

5

of the [j]udgment in the 1948 quiet title action which purports to grant fee simple title in [the property to] . . . Miller." In the proceedings before the special master, Defendants' position was that the judgment was valid, therefore, their interests that flowed from Miller's title were also valid while Plaintiffs posited that the judgment was void because the 1948 service by publication failed to satisfy the Wilsons' right to due process. Having reviewed the parties' evidence that was attached to their motions for summary judgment, the special master recommended that the district court grant summary judgment in favor of Defendants because (1) the undisputed material facts supported the legal conclusion that there was no violation of due process in connection with the 1948 quiet title proceeding; (2) Plaintiffs' effort to challenge the validity of the 1948 judgment constituted a collateral attack on the judgment that would only succeed if the judgment reflected an absence of jurisdiction, and an absence of jurisdiction was not reflected in the 1948 judgment; and (3) the undisputed facts established that Plaintiffs' claims of ownership were barred by laches, waiver, and judicial estoppel. Plaintiffs objected to the special master's report by submitting to the special master a motion to reconsider the report and moving the district court to reconsider the special master's findings before entering judgment. The district court's judgment adopted the special master's report in its entirety. In its summary judgment order, the district court quieted title to the property in favor of Defendants. Plaintiffs appeal from the court's judgment.

{18}    On appeal, Plaintiffs argue that the district court erred in each of the foregoing legal determinations. We conclude that Plaintiffs' evidence established that, as a matter of law, Miller failed to exercise diligence and good faith to notify the Wilsons of his quiet title action against them. We also conclude that Plaintiffs' action is not an improper collateral attack, and we further conclude that the evidence in this record does not support the court's conclusion that equitable principles barred Plaintiffs' lawsuit. We therefore hold that the district court erred in granting summary judgment in favor of Defendants.

## DISCUSSION

### Summary Judgment Standard of Review

{19}    "We review the district court's decision to grant summary judgment de novo." *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 14, 143 N.M. 142, 173 P.3d 749. Summary judgment is appropriate where the facts are undisputed, and the movant is entitled to judgment as a matter of law. *Id.* We review the facts in a light most favorable to the non-moving party. *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 12, 148 N.M. 627, 241 P.3d 628. Further, "[a]ll reasonable inferences from the record should be made in favor of the non[-]moving party[.]" *J.R. Hale Contracting Co. v. Union Pac. R.R.*, 2008-NMCA-037, ¶ 27, 143 N.M. 574, 179 P.3d 579 (internal quotation marks and citation omitted). New Mexico courts view summary judgment with disfavor. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 8, 148 N.M. 713, 242 P.3d 280.

### I.    The Due Process Issue

**{20}**     Plaintiffs argue that because the Wilsons were not personally served with notice of the 1948 quiet title action, or, at a minimum, notified of the lawsuit by publication in a San Diego newspaper or by mail at the Pershing Avenue address, the 1948 judgment that effectively deprived the Wilsons of their oil and gas interests in the property violated their right to due process and was, therefore, void.  Plaintiffs argue that the undisputed facts show that Miller knew or with reasonable diligence could have learned of the Wilsons' address of 3767 Pershing Avenue in San Diego (the Pershing Avenue address) at which Mabel Weeber could have been personally served in 1948.  They argue further that Miller's 1948 complaint contained a conclusory and self-serving representation that despite a diligent inquiry, he was unable to learn of the Wilsons' whereabouts to effect personal service upon them.  Plaintiffs contend that the court in the 1948 action compounded the due process violation by finding, based on the sheriff's return, that the Wilsons could not be personally served with process when, in fact, the return merely stated that they could not be served in San Juan County.

**{21}**     The issue whether the Wilsons were afforded due process is a question of law.  *See Burris-Awalt v. Knowles*, 2010-NMCA-083, ¶ 15, 148 N.M. 616, 241 P.3d 617.  Because we are reviewing the due process issue in the context of an appeal from a summary judgment, we indulge all reasonable inferences in favor of Plaintiffs who opposed Defendants' summary judgment motion.  *See Smith v. Durden*, 2012-NMSC-010, ¶ 5, 276 P.3d 943 (stating that in reviewing an appeal from a summary judgment, we indulge all reasonable inferences and view the facts in the light most favorable to the party opposing the summary judgment); *see also Turner v. Bassett*, 2003-NMCA-136, ¶¶ 9-10, 134 N.M. 621, 81 P.3d 564 (reviewing a quiet title decree entered in the context of summary judgment and viewing the evidence in a light most favorable to the nonmoving party), *rev'd on other grounds by* 2005-NMSC-009, 137 N.M. 381, 111 P.3d 701.  Whether the district court had jurisdiction over the Wilsons in the 1948 quiet title action is a question of law that we review de novo. *See Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 6, 304 P.3d 18 ("The determination whether a district court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo.").

**{22}**     In rejecting Plaintiffs' due process argument, the special master concluded that the undisputed facts did "not support the proposition that the 1948 mailing address for the Wilsons would have been identified through the exercise of reasonable diligence."  In support of its conclusion, the special master stated that the sheriff's return "specifically found that, after [a] diligent search and inquiry, . . . Defendants could not be located and personally served with process."  Further, the special master stated, "[b]y 1948, both Judson Wilson and Eva Wilson had died; only Mabel Wilson was alive to potentially receive personal service"; and "[b]y 1948, Mabel Wilson had married and was known as Mabel Weeber."  The special master observed that there were no facts in the record indicating that Miller knew of Mabel's married name or the name of her husband.  The special master rejected "Plaintiffs['] attempt to raise an issue of fact as to the availability of information regarding the location of Mabel Weeber" by showing that phone listings for Mabel and Charles Weeber included the Pershing Avenue address on the basis that these listings only reflected Mabel's married name.

7

**{23}**   In order to comport with due process, Miller was required to undertake a diligent and good faith effort to ascertain the location of the Wilsons and to personally serve them with process in the 1948 quiet title action.  *See Campbell v. Doherty*, 1949-NMSC-030, ¶¶ 27, 30-31, 53 N.M. 280, 206 P.2d 1145 (examining the record from a 1946 lawsuit and recognizing the requirement of diligence and good faith in attempting to discover the names and places of residence of the defendants and or his or her heirs); *Owens v. Owens*, 1927-NMSC-053, ¶¶ 2, 11, 14, 32 N.M. 445, 259 P. 822 (requiring a diligent and good faith effort to effect personal service of process); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309, 314-18 (1950) (considering the adequacy of notice given to necessary parties in a 1947 lawsuit and explaining that within the bounds of reasonableness and practicality, notice of process must be certain to reach the affected party).  In 1948 notice by publication would have been permissible only out of necessity.  *See Campbell*, 1949-NMSC-030, ¶ 31 (" 'Constructive service is in derogation of the common law.  It is harsh.  It lends itself to abuse.  It is only resorted to from necessity.' " (quoting *Owens*, 1927-NMSC-053, ¶ 12)); *see Mullane*, 339 U.S. at 315, 317 (recognizing that notice by publication comports with due process only where the parties are unknown or missing).

**{24}**   To support their argument that Miller knew or with reasonable diligence could have learned of Mabel Weeber's identity and whereabouts, Plaintiffs rely on the following evidence in the record that was before the special master.  The 1928 deed from the Wilsons to David Miller was notarized in San Diego.  In 1926 and in 1930, the San Diego city directory listed the Wilsons' address at the Pershing Avenue address.  In 1928, when David Miller acquired the property from the Wilsons, Thomas Miller paid half the purchase price of the property.  Eva Wilson's death certificate, which was issued by the Assessor/Recorder/County Clerk of San Diego County reflected that Eva Wilson lived at the Pershing Avenue address, and it listed Mrs. Weeber, who also lived at the Pershing Avenue address, as the "informant."  An obituary for Eva Wilson was printed in "The San Diego Union" newspaper in December 1944 and stated, in relevant part, that Mrs. Wilson was survived by her daughter, Mrs. Mabel W. Weeber.  Evidence presented to the special master showed that Mabel Weeber resided at the Pershing address from 1926 until her death in 1970.  No evidence in the record shows that the Wilsons ever resided in San Juan County.

**{25}**   Additionally, Plaintiffs look to Miller's knowingly false allegation in his 1948 quiet title action stating he was "the owner in fee simple" of the property.  Plaintiffs argue that this information could only have been gleaned by Miller or his attorneys having conducted a title examination of the property.  Miller's 1948 complaint stated that Miller had diligently searched and inquired for the "unknown heirs" of the defendants and for the "unknown persons and parties" who claimed "some right, title, interest, equity, lien, claim[,] or demand in, to, or against" the property, but that he could not determine the identities or whereabouts of the unknown heirs and the unknown claimants.  Miller's complaint did not, however, state that he had searched diligently or otherwise for the living defendants who were not residents of New Mexico, that is, for Mabel Wilson who was alive and going by her married name, Mabel Weeber.  Further, the 1948 sheriff's return stated, in relevant part, that the "Sheriff of San Juan County, New Mexico" certified that he had "diligently searched and inquired

for the [d]efendants . . . ; that after such search and inquiry, I have been unable to find any of the [d]efendants in San Juan County, New Mexico, and I have been unable to find the [p]ost [o]ffice addresses, places of residence, or whereabouts of the [d]efendants[.]" Relying on the sheriff's return that indicated a search limited to San Juan County, the 1948 court found, in relevant part, that the Wilsons could not be personally served there with process.

{26}   Based on the foregoing, Plaintiffs argue that because Miller contributed to his brother's purchase of the property and because the information regarding the Wilsons' residence was in his chain of title, Miller knew or should have known that the Wilsons lived in San Diego and that they had reserved the oil and gas interests in the property. They argue that had Miller wished to fulfill his due process obligations, with reasonable diligence, he could have ascertained Mabel Weeber's identity and address, and have personally sent notice to her of his quiet title action. At the very least, they argue Miller could have effected notice by publication in a San Diego newspaper. Plaintiffs argue further that Mabel Wilson was a named defendant in the quiet title action and, as such, she was neither an unknown heir nor was she an unknown claimant; therefore, Miller's complaint blatantly lacked any attestation as to a diligent search for her whereabouts.

{27}   Plaintiffs also argue that the 1948 district court erred in finding, based on the sheriff's return, that the Wilsons could not be personally served. In Plaintiffs' view, the sheriff's return merely confirmed that the sheriff was unable to find any of the defendants in San Juan County, New Mexico; therefore, according to Plaintiffs, the 1948 court's finding went "well beyond" what the sheriff's return stated.

{28}   Plaintiffs theorize that Miller's failure in good faith to attempt to personally serve Mabel Weeber with notice of his quiet title action may reasonably be viewed as having been intentional and self-serving, as Miller's aim in seeking to quiet title to the property was to acquire the rights to the Wilsons' oil and gas interests in the property. Plaintiffs support their ascription of Miller's mal-intent by pointing to the fact, also in the record, that "shortly after" the 1948 quiet title action, in 1950, Miller conveyed his interest in the property to McRee, but reserved three-fourths of the mineral interests for himself. Plaintiffs argue that Miller's failure to attempt to personally serve Mabel Weeber with process or at least to publish notice of the action in a San Diego newspaper or to mail notice of the action to the Pershing Avenue address was in derogation of the principle that the notice employed must be more than a mere gesture, it must reflect a desire on behalf of the party effecting service of actually informing the absentee of the lawsuit. *See Mullane*, 339 U.S. at 315 ("[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."). In sum, according to Plaintiffs, because Miller's obvious goal in quieting title to the property was to gain ownership of the Wilsons' oil and gas interests in the property, his actions were designed to avoid giving the Wilsons notice of his lawsuit.

{29}   In response, Defendants argue that summary judgment should be affirmed because Plaintiffs failed to demonstrate that Mabel Weeber was not on notice of the 1948 quiet title

9

action. Because our standard of review mandates that we view the evidence in the light most favorable to and indulge all reasonable inferences in favor of Plaintiffs in this case, we reject this argument. *See Wilde*, 2010-NMCA-085, ¶ 12 (stating the standard of review applicable to an appeal from summary judgment); *J.R. Hale Contracting*, 2008-NMCA-037, ¶ 27 (same). Although it is true that Plaintiffs have failed to affirmatively demonstrate that Mabel Weeber did not see the notice published in the Farmington paper, it is axiomatically difficult to prove something in the negative, particularly several decades after the death of the knowledgeable party. Based on the fact that Mabel Weeber did not enter an appearance in the 1948 action, and the further facts that while Mabel Weeber only lived in San Diego from 1926 and notice of Miller's lawsuit was published exclusively in a Farmington, New Mexico newspaper, a reasonable inference is that Mabel Weeber was not on notice of Miller's 1948 action.

**{30}** Alternatively, Defendants argue that the special master correctly concluded that Plaintiffs' evidence failed to raise a question of fact as to the validity of the 1948 court's finding that, notwithstanding a diligent search or inquiry, Miller could not locate the Wilsons. In support of their argument, Defendants point to the special master's conclusions that (1) "there is nothing to indicate that . . . Miller had information regarding Mabel Weeber's whereabouts . . . in 1948"; and (2) "[t]here are no facts in the record which would indicate that . . . Miller or anyone attempting to achieve service on Mabel knew of Mabel's married name or the name of her husband." Defendants contend that Plaintiffs' evidence does not contradict these conclusions. We disagree.

**{31}** Evidence in the record reflects that every transaction involving the Wilsons and the property showed that the Wilsons resided in San Diego during 1926-28, and no evidence showed that the Wilsons had resided any place except San Diego. Thus, as noted earlier, it is reasonable to infer that Miller was aware of the Wilsons' San Diego residence in 1927 and 1928 and likely could have ascertained their San Diego residence in 1948. Further, with nothing to suggest otherwise, it would be reasonable for Miller to have, in good faith, assumed that in 1948 the Wilsons were still in San Diego.

**{32}** The absence of anything in the record to indicate that Miller knew that Mabel Wilson had become Mabel Weeber does not support summary judgment for Defendants. Having apparently made no attempt to locate the Wilsons in San Diego, Miller's inability to learn of Mabel Wilson's married name was not caused by the fact that her name had changed, but by the fact that his efforts to locate her were limited to the State of New Mexico. *See Owens*, 1927-NMSC-053, ¶ 10 (stating that one cannot remain willfully, studiously, or deliberately ignorant of a means of personal service and honestly swear that the adversary's residence is unknown). It is possible that had Miller attempted to locate the Wilsons in San Diego, he would have been stymied by Mabel Wilson's changed name. It is equally possible that a phone call or letter to the county clerk in San Diego, who had issued Eva Wilson's death certificate, which listed Mrs. Weeber as the informant of Eva Wilson's death, would have led to the Wilsons' address, at which Mabel Weeber continued to reside with her husband as reflected by the 1947-48 San Diego City Directory that listed "Weeber Chas E (Mabel

W)" at the Pershing Avenue address.

**{33}** The special master concluded that Mabel Weeber's due process was not violated in the 1948 case because "there is nothing to indicate that . . . Miller had information regarding Mabel Weeber's whereabouts or that her whereabouts could be identified through reasonable diligence[.]" But reasonable inferences drawn from the evidence in favor of Plaintiffs require the conclusion that had Miller been interested in serving the Wilsons in 1948 with notice of the quiet title action, his search would and should have included San Diego and would have likely led to the possibility of learning Mabel Weeber's identity and address. Thus, the attempted constructive service in this case did not pass constitutional due process muster, and summary judgment in favor of Defendants was not appropriate.

**The Collateral Attack Issue**

**{34}** Because Plaintiffs sought, in the present lawsuit, to have the 1948 judgment declared void as to the Wilsons, their lawsuit constituted a collateral attack on the 1948 judgment. *See Hanratty v. Middle Rio Grande Conservancy Dist.*, 1970-NMSC-157, ¶¶ 4-5, 82 N.M. 275, 480 P.2d 165 (defining a "collateral attack" as an attempt in a separate action to impeach "a judgment by matters dehors the record" (internal quotation marks and citation omitted)). A judgment entered against a party who did not receive effective service of process is subject to a collateral attack because a court has no jurisdiction over parties who have not been notified of a lawsuit against them. *See Rodriguez v. La Cueva Ranch Co.*, 1912-NMSC-028, ¶¶ 1, 19, 22, 17 N.M. 246, 134 P. 228 (permitting a collateral attack on a land grant partitioning decree by a party that claimed adverse possession in the at-issue land, but who had not received notice of the partition suit and was, therefore, not subject to the decreeing court's jurisdiction); *see also Harlan v. Sparks*, 125 F.2d 502, 505 (10th Cir. 1942) (applying New Mexico law to hold that a probate court's decree of heirship and apportionment of the decedent's property was open to a collateral attack on the ground that certain interested parties did not receive effective service of process); *Jueng v. N.M. Dep't of Labor*, 1996-NMSC-006, ¶ 8, 121 N.M. 237, 910 P.2d 313 (stating that "failure to serve a party with process in a proper manner generally means only that the court has no power over that party and cannot render a judgment binding that party" (alteration, internal quotation marks, and citation omitted)). In this case, based on his having stated no more than that there was "nothing in the 1948 [j]udgment indicating a lack of jurisdiction[,]" the special master concluded that "Plaintiffs' collateral attack on the judgment fails as a matter of law."

**{35}** Relying on the principle that a judgment cannot be collaterally attacked unless the judgment or the record affirmatively shows that the court lacked jurisdiction over the party contesting its validity, Defendants argue that the 1948 judgment is not subject to Plaintiffs' collateral attack because, on its face, the judgment does not reflect an absence of jurisdiction. *See In re Estate of Baca*, 1980-NMSC-135, ¶ 11, 95 N.M. 294, 621 P.2d 511 (stating that judgments cannot be collaterally attacked "unless lack of jurisdiction appears affirmatively on the face of the judgment or in the judgment roll or record, or is made to appear in some

11

other permissible manner"); *Swallows v. Sierra*, 1961-NMSC-063, ¶ 4, 68 N.M. 338, 362 P.2d 391 (holding that a former judgment could not be collaterally attacked because the party contesting its validity had not claimed that the judgment failed to affirmatively show a lack of jurisdiction). Because the permissibility of a collateral attack of the 1948 judgment on the basis of lack of personal jurisdiction over the Wilsons was considered in the context of a summary judgment, we view the facts in the light most favorable to Plaintiffs and indulge all reasonable inferences in their favor. *See Smith*, 2012-NMSC-010, ¶ 5 (stating that in reviewing an appeal from a summary judgment, we indulge all reasonable inferences and view the facts in the light most favorable to the party opposing the summary judgment). We review de novo whether the court correctly applied the law to the facts. *Gomez v. Chavarria*, 2009-NMCA-035, ¶ 6, 146 N.M. 46, 206 P.3d 157.

**{36}** Defendants point to the fact that the 1948 judgment states that the Wilsons could not be located or served in San Juan County, notice of the lawsuit was published, and the Wilsons were named in the publication. The court found that the Wilsons could not be personally served, the Wilsons did not answer the published notice, and the judgment stated that the court had jurisdiction over the Wilsons. Defendants also assert that the sheriff's return supports the 1948 district court's finding that the Wilsons could not be personally served. We are not persuaded.

**{37}** As discussed earlier in this Opinion, Plaintiffs' evidence supports a reasonable inference that Miller, either by having contributed to the purchase price of the property when his brother purchased it from the Wilsons, or by the title examination that led him to name each of the Wilsons as defendants in his quiet title action, knew or should have known that the Wilsons lived in San Diego at the time of the deed. Nevertheless, neither Miller's complaint nor the sheriff's return show that the search for the Wilsons or their "unknown heirs" exceeded the bounds of San Juan County or New Mexico, nor did the complaint acknowledge the fact or the possibility of the Wilsons' out-of-state residence. By omitting from his 1948 complaint the fact that the Wilsons were non-residents of San Juan County or of New Mexico, Miller avoided having to aver that he had, in good faith, attempted to locate them in their home state. *See Bowers v. Brazell*, 1926-NMSC-003, ¶¶ 4, 11, 31 N.M. 316, 244 P. 893 (stating that where a plaintiff sought to provide service by publication of a defendant residing in a foreign jurisdiction, the plaintiff was required to state in an affidavit that a defendant who is owed service of process resides out of the state); *see also Campbell*, 1949-NMSC-030, ¶ 30 (recognizing the continuing validity, in 1949, of the *Bowers* decision related to notice and jurisdiction). Further, because Miller did not advise the 1948 court of the Wilsons' non-residence, the court had no basis on which to consider the effectiveness of notice by publication in a Farmington, New Mexico newspaper, nor did it have the opportunity to consider whether, owing to the possibility of ineffective notice, it lacked jurisdiction over the Wilsons.

**{38}** Additionally, Defendants argue that an averment in Miller's complaint that "if [the Wilsons] . . . are living, and reside in or have their places of residence in the State of New Mexico, [they] have secreted themselves so that service of process cannot be had upon them"

was sufficient to comport with the then-applicable Rule of Civil Procedure. Defendants' argument is premised on the notion that the then-applicable rule, stated in *Campbell*, provided that the plaintiff was required to "file a sworn pleading . . . stating that any defendant resides or has gone out of the state, or has concealed himself within the state, . . . so that process cannot be served upon . . . them" and, if this was done, service by publication was permissible. 1949-NMSC-030, ¶ 24 (internal quotation marks and citation omitted). Thus, Defendants argue, under the rule stated in *Campbell*, Miller could, in keeping with due process, either state that the Wilsons resided out of State *or* he could state that if they lived in New Mexico, they had secreted themselves. We disagree.

**{39}**    It would run contrary to due process to interpret the then-applicable service of process rule to allow a plaintiff to avoid making any effort beyond only publishing in a local newspaper where the property was located to pursue service on a quiet title defendant, who was known to reside in a foreign jurisdiction at the time that the parties conducted their business related to the property, and who was never known to have resided in New Mexico, merely by stating that the defendant may have secreted himself in New Mexico. *See Campbell*, 1949-NMSC-030, ¶ 31 (recognizing that in accord with the "plain purpose" of the then-applicable constructive notice statute, one may not willfully, studiously, and deliberately avoid knowledge of an adversary's residence and yet claim that the adversary's residence is unknown). Under the circumstances of this case, where a reasonable inference is that Miller knew of the Wilsons' residence outside New Mexico at the time that the Wilsons purchased the property from McEwen and at the time that the Wilsons conveyed the property to Thomas Miller, due process required that he so state and that he exert a good faith effort to effect personal service. *See Campbell*, 1949-NMSC-030, ¶ 35 ("Diligence is a relative term and must be determined by the circumstances of each case."); *Owens*, 1927-NMSC-053, ¶ 4 (holding that due process required personal service of a plaintiff whose whereabouts, in another state, could have been ascertained but for the plaintiff having wholly failed to make an effort to do so); *see also Mullane*, 339 U.S. at 315 ("The means [of notice] employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").

**{40}**    In sum, the 1948 quiet title record, including the complaint and the judgment, affirmatively shows that Miller failed to either investigate strong indications known to him of the Wilsons' whereabouts as required, or to fully apprise the court of the circumstance of the Wilsons' San Diego residence during their transactions in regard to the property. In turn, he was able to effectively avoid any requirement or potential mandate that he attempt to personally serve the Wilsons in San Diego. *See Owens*, 1927-NMSC-053, ¶¶ 4, 10 (holding that the plaintiff, who avoided a requirement to notify the non-resident defendant of his action by stating that he did not know the defendant's address, acted in bad faith because, had he so desired, he could easily have found the defendant's address). We hold that the district court erroneously determined that Plaintiffs' claim was barred under the collateral attack doctrine.

## II.    The Equity Issues

13

**{41}** The district court concluded that an alternative ground for granting summary judgment in favor of Defendants was that the undisputed facts demonstrated that Plaintiffs' claim was barred by the equitable doctrines of laches, waiver, and judicial estoppel. Defendants argue that the district court's application of laches, waiver, and judicial estoppel should be reviewed for an abuse of discretion. We disagree. When an equitable determination is made in the context of summary judgment, the appellate court reviews the evidence in the light most favorable to the nonmoving party to determine whether the district court erred as a matter of law in applying the equitable principles. *See Brown v. Trujillo*, 2004-NMCA-040, ¶ 20, 135 N.M. 365, 88 P.3d 881 (recognizing that ordinarily an equitable determination is reviewed for an abuse of discretion, but where the equitable determination was made "in the context of summary judgment, we view the evidence in the light most favorable to the nonmoving party"). We review issues of law de novo. *Helena Chem. Co. v. Uribe*, 2013-NMCA-017, ¶ 28, 293 P.3d 888.

**{42}** In order to permit a legal conclusion that the doctrine of laches applied, the undisputed facts before the district court had to show that (1) Defendants' conduct gave rise to the situation of which the complaint was made and for which Plaintiffs seek a remedy; (2) Plaintiffs had knowledge or notice of Defendants' conduct and an opportunity to institute a lawsuit, but delayed in asserting their rights; (3) Defendants lacked knowledge or notice that Plaintiffs would assert the right on which they based their lawsuit; and (4) Defendants would suffer injury or prejudice in the event Plaintiffs were to prevail or their lawsuit was allowed to proceed. *See Garcia v. Garcia*, 1991-NMSC-023, ¶ 31, 111 N.M. 581, 808 P.2d 31 (stating the elements of laches).

**{43}** In order to support the legal conclusion that the doctrine of waiver applied, the undisputed facts had to demonstrate that Plaintiffs knew they were entitled to enforce a right, but neglected to do so for so long that Defendants could fairly infer that Plaintiffs waived or abandoned the right. *See Magnolia Mountain Ltd. P'ship v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶ 29, 139 N.M. 288, 131 P.3d 675 (defining waiver by acquiescence). "[A] trial court should not infer acquiescence from doubtful or ambiguous acts." *Id.* (internal quotation marks and citation omitted).

**{44}** The court based its laches and waiver conclusions on the facts that (1) neither the Wilsons nor their successors did anything to claim ownership in the oil and gas interests connected to the property from the date of the deed to David Miller in 1928 until 2002 when McElvain sought to enter into a lease with them, and (2) Plaintiffs only "stepped forward to contend they [had] an interest in the property after" a well was successfully completed in 2007. While Defendants maintain that each of the district court's laches and waiver holdings should be affirmed, at oral argument before this Court, Defendants did not discuss waiver and concentrated on and emphasized their view that the doctrine of laches was properly applied in this case. Accordingly, although we hold that neither laches nor waiver were properly applied here, we address Defendants' laches argument in some detail.

**{45}** In regard to laches, Defendants argue in their answer brief and emphasized at oral

14

argument that because Miller recorded his quiet title judgment pursuant to NMSA 1978, Section 14-9-1 (1886, amended 1991), and because subsequent conveyances of the property were likewise recorded as required by law, the Wilsons and their heirs were, pursuant to NMSA 1978, Section 14-9-2 (1915), charged with "notice" of Miller's quiet title action and of subsequent transactions involving the property. *See* § 14-9-1 (requiring all writings affecting the title to real estate, including deeds, mortgages, and leases, to be recorded in the office of the county clerk in the county in which the property is located); § 14-9-2 (stating that county clerk records of instruments affecting real estate, as required by Section 14-9-1, "shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording"). In Defendants' view, this notice was sufficient to meet the laches element of Plaintiffs' notice of Defendants' quiet title decree and later lease transactions and their opportunity to institute a lawsuit but delayed in asserting their rights. *See Garcia*, 1991-NMSC-023, ¶ 31 (stating the elements of laches). Defendants' reliance on Sections 14-9-1 and -2 is misplaced.

**{46}** The phrase "all the world" as it is used in Section 14-9-2 "has been limited to mean persons who are bound to search the record," such as subsequent purchasers. *Allen v. Timberlake Ranch Landowners Ass'n*, 2005-NMCA-115, ¶ 34, 138 N.M. 318, 119 P.3d 743. Neither Section 14-9-2 nor any authority of which we are aware imposes a duty upon the owner of an interest in real property to constantly peruse the records of the county clerk to determine whether he or she has been divested of his or her property right in a lawsuit of which he or she was not notified. In this case, we will not interpret Section 14-9-2 to stand for the proposition that the Wilsons were "bound to search the record," *Allen*, 2005-NMCA-115, ¶ 34, after they sold the property subject to an oil and gas reservation, such that they should be held to have had constructive notice of Miller's quiet title action as a result of the recording of a quiet title judgment and later leasehold transactions in the San Juan County records.

**{47}** Defendants argue further that *Skaggs v. Conoco, Inc.*, 1998-NMCA-061, 125 N.M. 97, 957 P.2d 526, and *Farrar v. Hood*, 1952-NMSC-095, 56 N.M. 724, 249 P.2d 759, support the application of the doctrine of laches to the circumstances here. In *Skaggs*, in 1994 the plaintiffs sought to declare void a 1927 drilling and operating agreement between Mr. Skaggs (the decedent) and the prospecting company, Marland Oil Company of Colorado, permitting Marland to explore, drill, develop, produce, and market any oil and gas on the at-issue property. 1998-NMCA-061, ¶¶ 3-4, 7. The plaintiffs claimed that the 1927 agreement was void because the decedent's wife at the time of the conveyance had not joined in the conveyance, and as a result of the allegedly void conveyance, the plaintiffs, who were the decedent's wife's heirs, sought to quiet title to the property in their favor. *Id.* ¶¶ 2-3, 7-8, 10. The defendants claimed that laches, among other defenses, barred the plaintiffs' lawsuit. *Id.* ¶ 7. The record on appeal before the *Skaggs* Court included undisputed evidence that as early as 1951, the decedent's wife knew of her husband's allegedly void conveyance to Marland and of his subsequent conveyance to third parties of any royalty interest from Marland's activities. *Id.* ¶ 11. The *Skaggs* Court held that under those circumstances, where it was evident that the decedent's wife was on notice of her

husband's conveyances, yet neither she nor the heirs attempted to enforce any rights related to the property until more than forty years later, during which time the defendants had invested "substantial sums in prospecting and developing" the property, the doctrine of laches was properly applied. *Id.* ¶ 13.

**{48}** *Farrar* involved a transaction in which one party, the conveyor, conveyed mineral interests in exchange for a share of a speculative security sold by another party, the seller. 1952-NMSC-095, ¶ 3. The seller was not authorized to engage in the sale of speculative securities at the time of the transaction. *Id.* ¶¶ 2, 8-11. The seller induced the conveyor into the sale by representing that the speculative security venture would be profitable, however, five years after the transaction, the seller informed the conveyor that the venture was less than half as valuable as the seller had earlier represented. *Id.* ¶¶ 12, 14. Nevertheless, the conveyor did not attempt to escape the effect of his mineral deed transfer to the seller until nineteen years later, when the conveyor sought to void the original transaction based on a prohibition against the unauthorized sale of speculative securities. *Id.* ¶¶ 14, 16, 33. By the time the conveyor sought to void the original transaction, the mineral interests that the conveyor had conveyed to the seller had become twenty times more valuable than they were at the time of the conveyance. *Id.* ¶ 33. The *Farrar* Court held that laches barred the conveyor's lawsuit because it violated the principle that "[a] person may not withhold his claim, awaiting the outcome of an enterprise, and then, after a decided turn has taken place in his favor, assert his interest, especially where he has thus avoided the risks of the enterprise." *Id.* ¶ 35 (internal quotation marks and citation omitted).

**{49}** In both *Skaggs* and *Farrar*, the parties that were barred by laches were on notice of the allegedly wrongful transaction underlying their lawsuits years before they sued to vindicate their rights. Notably, in concluding that waiver and laches applied in the case now before this Court, the district court did not find that the undisputed facts of this case demonstrated that the Wilsons knew or had notice of Miller's quiet title action, or of Miller's subsequent actions in regard to the mineral interests in the property. Nor, on this record, with regard to the question whether the Wilsons' due process right to notice was violated, could the district court reasonably have concluded that, as a matter of undisputed fact, the Wilsons were on notice of Miller's quiet title action. Unlike the plaintiffs in *Skaggs* and *Farrar*, Plaintiffs have not been shown to have delayed legal action to vindicate a wrong of which they were indisputably on notice. We conclude, therefore, that the record did not support a legal determination that Plaintiffs' lawsuit was barred by laches, and we further conclude that *Skaggs* and *Farrar* do not support Defendants' laches argument. *See Garcia*, 1991-NMSC-023, ¶ 31 (stating that a finding of laches requires that the complaining party had notice of the defendant's actions).

**{50}** There is no evidence to support an inference or a conclusion that the Wilsons or their heirs knew that they were entitled to enforce their right to the oil and gas interest in the property against Miller or his heirs, but neglected to do so. The district court could not properly have determined that waiver applied. *See Magnolia Mountain*, 2006-NMCA-027, ¶ 29 (defining waiver). Having not been notified that their ownership of the oil and gas

16

interests in the property were threatened and later unlawfully terminated by Miller's quiet title action, the Wilsons and their heirs cannot be said to have waived their rights.

**{51}** Judicial estoppel is applied to prevent a party from maintaining inconsistent positions in judicial proceedings. *Citizens Bank v. C & H Constr. & Paving Co.*, 1976-NMCA-063, ¶ 36, 89 N.M. 360, 552 P.2d 796. "Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, [judicial estoppel precludes him from] thereafter assum[ing] a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* Here, the special master determined that judicial estoppel barred Plaintiffs' lawsuit because Mabel Weeber and her husband, Charles Weeber, whose estates have gone through probate, did not indicate ownership in the subject property at the time of their respective deaths. Thus, according to the special master, Plaintiffs' present lawsuit was inconsistent with their actions in the probate proceedings.

**{52}** In our view, judicial estoppel does not apply under the circumstances of this case. That the inventories in Mabel and Charles Weeber's probate proceedings omitted the oil and gas interests in the property is of little, if any, probative value on the matter of ownership of or right to the oil and gas interests in the property. The wills did not mention any particular properties and the inventories were prepared after the two were deceased. Indeed, it is not unheard of that a will would dispose of some, but not all, of a decedent's property. *See* Cal. Probate Code, § 6400 (West 2014) (stating that "[a]ny part of the estate of a decedent not effectively disposed of by will passes to the decedent's heirs"); *see also* NMSA 1978, § 45-2-101(A) (1993) (stating that "[a]ny part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs"). Moreover, the parties do not point to any evidence in the record that reflects that Mabel Weeber or, later, her husband, affirmatively acknowledged their lack of ownership or right to the oil and gas interests in the property. Thus, what this record shows is an absence of any legal position taken by Mabel or Charles Weeber or their heirs in regard to the oil and gas interests in the property. Under these circumstances, we conclude that judicial estoppel is not supported by the undisputed facts in the record.

**{53}** In sum, the record demonstrates that the Wilsons, particularly Mabel Weeber, did not receive constitutionally adequate notice of Miller's 1948 quiet title action. Further, nothing in the record reflects that they were placed on notice of the quiet title decree or later oil and gas transactions. Under these circumstances, we cannot uphold the district court's application of the equitable principles as a bar to Plaintiffs' lawsuit.

**Defendants' Presumed Grant Argument**

**{54}** Defendants argue that we should affirm the district court's summary judgment on the basis of the doctrine of presumed grant. Neither the special master nor the district court considered or ruled on this issue. It is therefore not properly before this Court, and we decline to consider the issue. *See Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 41, 302

P.3d 751 (stating that, where the district court did not consider or rule on an issue, the issue was not properly before this Court).

**CONCLUSION**

**{55}** Having concluded that Miller failed to attempt, in good faith and with reasonable diligence, to serve Mabel Weeber with notice of his 1948 quiet title action, we hold that the quiet title action was subject to a collateral attack and was void as to the Wilsons. We also hold that the facts in this record did not support the district court's application and determinations of laches, waiver, and judicial estoppel. We reverse the order of the district court granting summary judgment in favor of Defendants. We remand for further proceedings consistent with this Opinion.

**{56} IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**